IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,           Crim. No. 02-60103-HO

       Plaintiff,                    ORDER

  v.

KEITH MAURICE TRON,

       Defendant.

Introduction

Defendant filed an amended motion to vacate, set aside or correct his 188-month sentence following his conviction for being an armed career criminal. Defendant entered a conditional guilty plea on May 7, 2003. Sentencing occurred on July 24, 2003. Defendant contends that he entered his guilty plea involuntarily without understanding the consequences, he was incompetent, appellate counsel provided ineffective assistance of counsel in advising defendant to voluntarily dismiss his appeal regarding application of the firearms sentence enhancement (see U.S.S.G. §

4B1.4(b)(3)(A)), and application of the enhancement violates Blakely v. Washington, 524 U.S. 296 (2004).

The court granted the government's request for an evidentiary hearing on the issue of whether trial counsel provided ineffective assistance of counsel.[1] Defendant does not allege ineffective assistance of trial counsel in his amended motion, however. In his reply memorandum, defendant represents that he asserts no coercion claim against his trial attorney. Id., ¶ 1. Defendant submitted exhibits in support of his claims that he entered his plea involuntarily, unknowingly and without competence.

## Discussion

Defendant's sentence became final before the Supreme Court decided Blakely. Blakely does not apply retroactively in this proceeding. Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005).

Defendant's memorandum alleges advice received from appellate counsel. Def's Memo. at 8-9. The memorandum seems to refer to a document. There is no evidence of appellate counsel's advice, however. In any event, the court finds that the alleged advice could not have prejudiced defendant, because the court did not err in applying the firearms enhancement. If, as defendant alleges, appellate counsel was unaware that the Supreme Court had

---

[1] Defendant did not request an evidentiary hearing.

2 - ORDER

granted certiorari in the <u>Blakely</u> case at the time she advised defendant to dismiss his appeal, such lack of awareness does not amount to constitutionally deficient assistance of counsel. Again, there is no evidence of appellate counsel's knowledge or advice.

The court received evidence regarding defendant's claims of incompetence and involuntary plea. The evidence is summarized below. The court has considered all of the evidence, the plea petition, transcripts of the change of plea and sentencing hearings, and its own recollection of these hearings.

Defendant's trial attorney testified in substance as follows. Counsel was aware of defendant's knee problems. As of February 4, 2003, defendant wanted to go to trial. On February 10, 2003, defendant decided to enter a conditional guilty plea, and to file a motion to suppress evidence. Thereafter, defendant and counsel discussed defendant's plea on three occasions, including on the morning of the plea hearing. Counsel had no concerns about medications or defendant's competency. Defendant was not happy about his choices and changed his mind periodically.

Sigrun Dickrun, Lane County Corrections Health Services Manager and custodian of medical records, testified that morning doses of mediation are given between 7:30AM and 8:30AM at the jail.

3 - ORDER

Deputy United States Marshal Mark Barr testified that duty logs for May 7, 2003 indicate that defendant arrived at the courthouse between 8:45 and 9:20AM. The change of plea hearing commenced at approximately 11:45AM.

Dr. John Alcott treated defendant at all material times. He testified in substance as follows. Dr. Alcott prescribed Claritin (an antihistamine), for rhinitis, Flonase (a steroid), to stabilize membranes of the nose, and Aleve (naproxen) for pain. Claritin would not ordinarily impair thinking. The drug could cause drowsiness, but effects are usually minimal. The drug is now sold over the counter. Dr. Alcott prescribed one dose per day. Side effects of Flonase are confined to the nose and throat, and are not associated with consciousness, awareness or the ability to concentrate. Effects last 24 hrs. Possible side effects of Aleve include upset stomach, and are not ordinarily associated with cognition or mental functioning. Effects last 8-12 hours. The possibility that Aleve could cause drowsiness increases with dosage. Dr. Alcott is not aware of synergistic side effects.

Dr. Alcott further testified regarding defendant's medical records. A nurse's entry dated March 20, 2003, indicates that defendant fell out of bed and sustained a cut above the eye, and apparently lost consciousness. Later that evening, defendant felt light-headed, but denied loss of consciousness. An entry

4 - ORDER

for March 25, 2003, notes several days of dizziness among other complaints. Dr. Alcott diagnosed an inner ear abnormality. The entry for April 8, 2003, indicates improvement of vertigo. Dr. Alcott saw defendant on May 6, 2003. He prescribed an inhaler for stuffy nose and ibuprofen for knee pain. There is no mention of a complaint of dizziness or drowsiness. Dr. Alcott's standard practice is to document such complaints. On May 13, 2003, defendant complained of dizziness two times per week lasting one half hour, relieved by lying down. The next entry in the medical records is dated July 29, 2003. The entry indicates that defendant has a prescription for Baclofen.

Defendant testified in substance as follows. Defendant suffered from knee pain while his case was pending. Defendant informed his attorney of his medications, although he does not remember when he did so. Allergies cause congestion and sinus pain, which makes defendant confused. Flonase makes defendant feel drowsy and dizzy. Promethazine makes defendant feel drowsy and groggy. Amitriptyline and Paxil make defendant feel sleepy and drowsy. Allergy medications made defendant feel confused. Defendant did not tell counsel or counsel's staff that he felt drowsy or confused. Defendant did not feel he could share confidential information with his attorney. Defendant did not believe his attorney would fight for him. Defendant's attorney was stand-off-ish.

5 - ORDER

Defendant further testified that he does not remember going over the plea petition with his attorney. He changed his mind numerous times because he was confused by his medication. He does not recall what happened or what he said at the change of plea hearing. He said what his lawyer wanted him to say. He did not tell his attorney of his misgivings about his plea.

Defendant further testified that he was not asked whether he was feeling well at the sentencing hearing. He was scared to speak up. After going without medications at the federal correctional institution, defendant realized he had not been competent, and his plea was involuntary.

Defendant testified that at the time of the change of plea hearing, he was taking promethazine, Aleve and Flonase, and at the time of the sentencing hearing, he was taking amitriptyline and Paxil.

Defendant testified that he has prior convictions for forgery and fraud.

Lane County Corrections records indicate that on or around the date of the change of plea hearing, defendant had prescriptions for promethazine, Aleve, bacitracin and Flonase, and that on or around the date of the sentencing hearing, defendant had prescriptions for baclofen, Paxil, amitriptyline, Tylenol, Benadryl, Motrin and Flonase.

The plea petition signed by defendant on May 7, 2003,

6 - ORDER

states, "I am not under the influence of alcohol or drugs. I am not suffering from any injury, illness or disability affecting my thinking or my ability to reason. I have not taken any drugs or medications within the past seven (7) days." Plea Pet., ¶ 5. Defendant responded appropriately to all of the court's questions during the change of plea colloquy and the sentencing hearing. Defendant was lucid during his allocution. The court did not ask defendant about medications or the effects thereof at the change of plea hearing. Defendant did not appear drowsy or confused at the change of plea or sentencing hearings, and appeared to comprehend the proceedings.

Ordinarily, "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." Bousley v. United States, 523 U.S. 614, (1998). Defendant did not previously challenge his competency or entry of his plea before this court or on direct review. To the extent these claims are cognizable on collateral review, the court holds that defendant was competent to enter his guilty plea, and that he did so voluntarily and knowingly. For

///

///

///

7 - ORDER

this reason, any unwritten claim of ineffective assistance of trial counsel must fail for lack of prejudice.

## Conclusion

Based on the foregoing, defendant's amended motion to vacate, set aside or correct sentence [#81] is denied.

IT IS SO ORDERED.

DATED this 3rd day of ~~September~~ OCTOBER, 2006.

_____
Michael R. Hogan
United States District Judge

8 - ORDER